TECHNICAL COLOR & CHEMICAL
WORKS, INC., Creditor-Appellant,

v.

TWO GUYS FROM MASSAPEQUA, INC.,
Crib, Carriage & Toy Distributors,
Inc., Debtors-Appellees.

No. 143, Docket 28398.

United States Court of Appeals
Second Circuit.

Argued Nov. 4, 1963.

Decided Feb. 7, 1964.

738

Bernard R. Selkowe, New York City, for appellant.

Levin & Weintraub, New York City (Harris Levin, Michael J. Crames, New York City, of counsel), for appellees.

Before WATERMAN, MOORE and SMITH, Circuit Judges.

WATERMAN, Circuit Judge.

Appellant, a creditor in bankruptcy proceedings, seeks review of an order of the United States District Court for the Eastern District of New York, confirming a plan of arrangement filed by appellee-debtors under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701–799.

Appellees are two separate corporations, owned by the same principals. On January 23, 1963 appellees both filed petitions for an arrangement under Chapter XI of the Bankruptcy Act, and an order was entered consolidating the two proceedings. A creditors' committee was subsequently formed, and a majority of the committee eventually agreed upon a proposed plan of arrangement to be submitted to appellees' unsecured creditors. Though appellant claims otherwise, the record in this case appears to support the finding of the court below that a majority of the creditors entitled to vote on the plan did approve it.

Under the approved plan, appellees' creditors were to receive 33⅓ per cent of their claims, with 20 per cent due upon court confirmation of the plan, and the

rest payable in five installments spaced over a period terminating on January 10, 1966. The plan was submitted to the court for confirmation and, over the vigorous objections of appellant, which moved for an order rejecting the plan, it was officially confirmed. The decision denying appellant's motion was made solely on the basis of affidavits submitted by both sides, and after a hearing devoted primarily to a discussion of the contents of the affidavits. No real evidentiary hearing was held at which evidence on the issues raised by the affidavits was taken.

■■■ We feel that appellant's objections, which are reviewed in detail later in this opinion, were entitled to a less cursory examination than they were accorded by the court below. The allegations contained in appellant's affidavits, never really contested with any specificity by appellees and substantiated to a considerable degree by the report of the creditors' committee, required a full evidentiary hearing before either the lower court or a referee. The refusal of the court to conduct such a hearing, thereby leaving crucial issues unresolved, constitutes reversible error.

Appellant's objections to the plan boiled down in large part to claims that a number of unlawful and voidable transfers of assets had been made by the appellees less than six weeks before the Chapter XI petitions were filed in this case. Thus, appellant claimed that there had been payments of $10,000 or more in purported salaries to the wives of appellees' principals, though admittedly the wives were not employees of appellees. A $15,000 payment was allegedly made by appellees to the estate of one of the principal's relatives as a repayment for a loan, though no such loan had been carried on appellees' books. Appellant also claimed that appellees had transferred

certain sums to their accountants, allegedly in repayment of loans, which sums were $5,000 in excess of the loans reported on appellees' books.

Two other transactions of this type were alleged by appellant. One transaction involved the prepayment by appellees of a $100,000 note due a bank, on which note the principals of appellees had been liable personally. The other involved allegedly inflated rental payments to another corporation owned by appellees' principals; appellant claimed that in January of 1963 appellees paid to the commonly owned corporation $25,000 in purported rentals, thereby bringing the total of such payments to $121,651.74 for one year, even though the previously reported rental for the same premises was only $32,000 per year. Appellant also alleged that, though appellees' books showed a total of $67,374 due to two corporations owned by appellees' principals, no such sum was really due and owing these corporations.

If all these allegations were true and the above described transfers recoverable, appellees' true financial situation would have been shown to be quite different from that which the creditors' committee assumed it was when the proposed plan of arrangement was drawn up. The creditors' committee reported that appellees' combined balance sheet showed assets of $417,112 and liabilities of $430,650. The committee concluded that the greatest possible return to creditors could be had by adopting appellees' proposal for payment of 33⅓ per cent of the claims, payable partly on a deferred basis.

Appellant argues that, assuming the truth of all the above allegations, appellees' combined balance sheet should show assets of $407,100 and liabilities of $352,752, permitting repayment in full to the creditors on a deferred basis.[1]

1. It will be noted that the figure representing the total assets which appellant submitted is slightly lower than the one used by the credito.s' committee, despite the claimed voidable transactions which appellant has urged should be taken into account. There are two reasons for this. First, appellant's figure does not include any portion of the $100,000 prepaid on the note held by the bank, as appellant felt that the brevity of the hearing below prohibited its establishing facts sufficient

**740**

Appellant also argues that, taking into consideration the value of the claimed voidable transfers, appellees' realizable assets upon a prompt liquidation would be $214,651 as against liabilities of $350,919. Thus, if appellant is correct, a liquidation of appellees' businesses would permit payment to the creditors of approximately 60 per cent of their claims, considerably more than would be realized through the plan of arrangement confirmed by the court below.

Though it appears from the record that appellees may have made some attempt to explain some of these questionable transactions to the creditors' committee during negotiations, the only response to these charges which appears in the record is a general denial. No attempt was made by appellees to attack with any particularity the claims made by appellant, nor, indeed, has any such explanation been called to our attention by appellees on appeal. Moreover, the report of the creditors' committee supports, to a considerable degree, the allegations which formed the basis of appellant's objections to the plan. The committee report noted that advances had

to include it legitimately in its computations. For that reason, appellant regards the asset total which it has submitted as a minimum figure. Second, the creditors' committee, for reasons not readily apparent, included as an asset the entire sum of $121,651 which appellees purportedly paid the commonly held corporation for rent. The creditors' committee labeled the item "advances" to the said corporation. Appellant, on the other hand, has subtracted the $32,000 which he contends is the correct yearly rent, and has therefore arrived at a figure of $89,651 for the amount returnable to appellees from the commonly held corporation. The appellant gives a more favorable estimate of appellees' financial picture, however, because of the addition of other assets and the elimination of alleged liabilities which the creditors' committee did not take into consideration.

2. The explanations reported by the creditors' committee were less than convincing. The $20,000 paid to members of appellees' principals' families, for loans not recorded on appellees' books, was ex-

been made to a corporation owned by appellees' principals, that the appellees' note on which the principals were liable had been prepaid, and that some $20,000 had been repaid on purported loans from various members of the principals' families despite the fact that appellees' books reflected no indebtedness due. The committee, however, merely noted in its report that the appellees had offered explanations for several of the transactions,[2] and added that "notwithstanding these difficulties" a majority of the committee had voted to recommend acceptance of the plan.

Even though a majority of appellees' creditors did accept the plan, the circumstances developed through the little attention that was given below to appellant's objections required that court approval of the plan at least be withheld until evidence could be taken with reference to the allegations made by appellant.

Section 366 of the Bankruptcy Act, 11 U.S.C. § 766, provides that even when a plan of arrangement has been approved by a majority of a debtor's creditors, a court may not confirm the arrangement until it is satisfied that certain condi-

plained on the ground that the loans had been made prior to the period covered by the current balance sheet. With regard to the prepayment of the $100,000 note due in January, it was stated that the loan had been traditionally repaid in December and renewed the following January, but that after repayment of the last loan the application for renewal had been refused. The explanation for the rental payments to the commonly held corporation in the amount of $121,651 was the last one offered in the report. A substantial part of it was explained by noting that leases between the appellees and the corporation (which leases appellant claims were unrecorded) showed a rental of $96,000. No figure was stated as having been actually paid as rent in previous years (claimed by appellant to be $32,000); and as to the amount in excess of even the $96,000 it was said that, while the leases called for specific rental payments, the real intention of the parties had been that the appellees would simply pay all the expenses of maintaining the premises.

tions have been met. The section reads as follows:

> "The court shall confirm an arrangement if satisfied that—
>
> "(1) the provisions of this chapter have been complied with;
>
> "(2) it is for the best interests of the creditors and is feasible;
>
> "(3) the debtor has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to the discharge of a bankrupt; and
>
> "(4) the proposal and its acceptance are in good faith and have not been made or procured by any means, promises, or acts forbidden by this title.
>
> "Confirmation of an arrangement shall not be refused solely because the interest of a debtor, or if the debtor is a corporation, the interests of its stockholders or members will be preserved under the arrangement."

The section places upon a court the duty to exercise its own independent judgment as to whether all of the above conditions have been met, with majority approval of the creditors being a separate and distinct requirement even as to whether a plan is in their best interests. See, e. g., Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939) (dealing with the Bankruptcy Act's former requirement that a plan be "fair and equitable"); Bartle v. Markson Bros., Inc., 314 F.2d 303 (2 Cir. 1963); Matter of Bruce Hunt of Albany Corp., 163 F.Supp. 939 (N.D.N.Y.1958); In re H. Krieger & Co., 40 F.Supp. 340 (D.Conn.1941); 9 Collier on Bankruptcy 282–83 (14th ed. 1963).[3]

Appellant's first objection to the proposed plan was that it was not in the best interests of the creditors. Had appellant's allegations been tested and confirmed by the taking of evidence, it appears that it would indeed have been established that this condition to confirmation had not been met. According to the adjusted figures offered by appellant, which were based primarily on adding to appellees' assets the claimed voidable transfers, creditors would be able to realize full payment of their claims if installment payments were to be had on a deferred basis, and about a 60 per cent payment if the debtors were liquidated. The plan which was confirmed below allowed creditors to realize only 33⅓ per cent of their claims. When a plan of arrangement offers creditors considerably less than they would realize through liquidation, the plan should not be regarded as being in the best interests of the creditors. Matter of Bruce Hunt of Albany Corp., supra; In re H. Krieger & Co., supra; 9 Collier on Bankruptcy 280 (14th ed. 1963). See Bartle v. Markson Bros., Inc., supra, 314 F.2d at 305. It is also obvious that a plan offering creditors 33⅓ per cent on a deferred basis would not be in the best interests of the creditors if a plan of deferred payment could be arranged under which payment in full could be realized. Therefore appellant's allegations, if substantiated in the course of a true evidentiary hearing, would have barred confirmation of the plan because of a failure to meet the "best interest" requirement of Section 366 of the Bankruptcy Act.

It was also appellant's contention that the alleged transfers barred confirmation under subsections (3) and (4) of Section 366. Subsection (3) requires judicial satisfaction that the debtor has

---

3. District Judge (later Circuit Judge) Hincks, in In re H. Krieger & Co., supra, 40 F.Supp. at 341, stated: "There is considerable evidence which indicates that the creditors might fare better if the estate were liquidated. And the fact that a large percentage of the creditors have accepted the arrangement is not conclusive; at most it is prima facie evidence on that issue * * *. Under Case v. Los Angeles Lumber Products Co. * * * it would appear that the acceptance of the arrangement by creditors, standing alone, is not enough to support a finding that it is in their best interest; such a finding must be supported by independent evidence."

not been guilty of any act or failed to perform any duties which would be a bar to the discharge of a bankrupt; and subsection (4) requires that the debtor make his proposal for an arrangement in good faith. The acts barring a discharge which are referred to in Section 366(3) are set forth in Section 14, sub. c of the Act, 11 U.S.C. § 32, sub. c. That section provides, in pertinent part:

"(c) The court shall grant the discharge unless satisfied that the bankrupt has * * * (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed, any of his property, with intent to hinder, delay, or defraud his creditors; * * * or (7) has failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities: *Provided*, That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

All of the alleged transfers which appellant claims were made by appellees took place well within the twelve month period of Section 14, sub. c. In fact, all of the transfers are claimed to have occurred within six weeks prior to the date on which appellees filed their Chapter XI petition. It would seem that, if appellant's charges had been substantiated, a number of the transfers would have been shown to have amounted to conveyances of the type prohibited by Section 14, sub. c. And if, during the course of an evidentiary hearing, appellees had continued to offer no more than a general denial to appellant's charges,

there would also have been a failure to explain satisfactorily losses of assets. At the very least, the allegations which were made, coupled with the admissions contained in the creditors' report, constituted reasonable grounds for believing that appellees had committed acts or had failed to perform duties described in Section 14, sub. c. See In re Lilyknit Silk Underwear Co., 64 F.2d 404 (2 Cir. 1933).

Therefore, a fuller hearing than was had below was required on the question of the legitimacy of appellant's objections to confirmation of the plan offered by appellees. It appears from the record that that a hearing was not held because the court below permitted itself to place far too much emphasis upon the fact that a majority of appellees' creditors had approved the plan. This resulted in a failure to consider sufficiently the contentions that appellant had urged, and a consequent failure to exercise that type of independent judgment required of the court by Section 366 of the Bankruptcy Act.

■ Appellees claim, however, that we cannot reverse the district court because appellant never properly lodged its objections to confirmation during the proceedings below. We are told that the objections were contained in affidavits sworn to by appellant's attorney, rather than, as required by local bankruptcy rules, in an affidavit sworn to by one of appellant's officers. Under the circumstances of this case, however, we are not persuaded that this oversight by appellant should bar a proper review of what may well be a grossly unfair plan of arrangement. The affidavits which were submitted, outlining in considerable detail the circumstances claimed to bar confirmation, contained sufficient information which more than fairly apprised appellees of the objections which appellant had to the proposed plan. Appellees, moreover, made no objection below to the form of the affidavits submitted by appellant, and a brief hearing was had on the basis of them. Under these circumstances, the procedural defect now noted by appellees should not constitute a bar to a remand

for a reconsideration of the plan. Cf. Johnson v. United States, 318 U.S. 189, 200, 63 S.Ct. 549, 555, 87 L.Ed. 704 (1943); United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936); Troupe v. Chicago, Duluth & Georgian Bay Transit Co., 234 F.2d 253, 259–60 (2 Cir. 1956).

▪ Nor do we find convincing appellees' claim that a reconsideration of the plan of arrangement is barred because of mootness. Though by now there may have been distributed to many creditors a portion of the total amount due them under the plan which was erroneously confirmed, this has not rendered moot any questions raised by appellant. If, upon reconsideration of the plan by the court below, appellant's objections to confirmation are sustained, the creditors will be entitled to payments well in excess of those to which they are now entitled, and the sums already received will be, of course, merely partial payments on account. Therefore, the fact that partial payment has already been made to many of appellees' creditors under the erstwhile approved plan should not bar reconsideration.

Reversed and remanded.