477 F.2d 742
 In the Matter of KDI CORPORATION, Debtor.
Frederick BEACH and Vincent DiRubbio, Appellants,
v.
KDI CORPORATION, Appellee.
Frederick BEACH and Vincent DiRubbio, Petitioners-Appellees,
v.
KDI CREDITORS' COMMITTEE, Respondent-Appellant.
 Nos. 72-1986, 72-2045.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 7, 1973.
Decided April 10, 1973.
 
 J. Vincent Aug, Nieman, Aug, Elder & Jacogs, Cincinnati, Ohio, for Frederick Beach and Vincent DiRubbio, appellants and cross-appellees; Converse Murdoch, Peter J. Walsh, Wilmington, Del., of counsel.
 Mark S. Lieberman, Chicago, Ill., and John A. Benjamin, Cincinnati, Ohio, for appellees; Gootlieb & Chwartz, Chicago, Ill., Robert O. Edington, Cors, Hair & Hartstock, Cincinnati, Ohio, on brief for KDI Corp., appellee and crossappellant; Benjamin, Faulkner & Tepe, Cincinnati, Ohio, on brief for KDI Creditors Committee, appellee and cross-appellant.
 Before MILLER, KENT and LIVELY, Circuit Judges.
 LIVELY, Circuit Judge.
 
 
 1
 The history of this bankruptcy proceeding is set forth in Beach and DiRubbio v. KDI Corporation et al. (No. 72-1485), 477 F.2d 726 (6th Cir. 1973) decided today. In that action we affirmed the District Court's denial of a motion to dismiss proceedings under Chapter XI of the Bankruptcy Act and require the debtor to proceed under Chapter X. While that appeal was pending, on September 16, 1971 the debtor, KDI Corporation, made an application to the referee for confirmation of the proposed plan of arrangement. Objections to confirmation were filed by two groups of creditors and a hearing on the application was held on October 29, 1971.
 
 
 2
 In its application for confirmation the debtor stated, inter alia, that it had not been guilty of any acts or failures which would be a bar to discharge of a bankrupt. This, along with other statements in its application, followed the language of Section 366 of the Bankruptcy Act (11 U.S.C. Sec. 766), which reads as follows:
 
 Sec. 766. Requisites for confirmation
 
 3
 The court shall confirm an arrangement if satisfied that-
 
 
 4
 (1) the provisions of this chapter have been complied with;
 
 
 5
 (2) it is for the best interests of the creditors and is feasible;
 
 
 6
 (3) the debtor has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to the discharge of a bankrupt; and
 
 
 7
 (4) the proposal and its acceptance are in good faith and have not been made or procured by any means, promises, or acts forbidden by this title.
 
 
 8
 Confirmation of an arrangement shall not be refused solely because the interest of a debtor, or if the debtor is a corporation, the interests of its stockholders or members will be preserved under the arrangement.
 
 
 9
 Although five separate reasons were set out in the two objections to confirmation, neither objection alleged that the plan of arrangement should be rejected for failure to qualify under subsection (3), supra.
 
 
 10
 At the confirmation hearing the debtor and the official creditors' committee produced evidence in support of confirmation, but the objectors introduced no witnesses and relied upon cross-examination and the filing of portions of approximately fifteen contracts as exhibits. The entire thrust of the objectors' efforts was concerned with the alleged illegality of the plan. The objectors stated that the whole point of their objection was that the debtor was trying to do something in Chapter XI that it could only do in Chapter X. It was claimed that the proposed plan was illegal because it affected shareholders' rights, particularly those shareholders in Class 6 of the proposed plan. No evidence was produced of any act or failure by the debtor which would have been a bar to discharge of a bankrupt under Sec. 366(3) of the Act.
 
 
 11
 On March 27, 1972 the referee filed an opinion and order in which all of the grounds for denying confirmation asserted by the objectors were overruled. However, the opinion stated that it was incumbent upon the referee, in addition to disposing of objections, to make an independent judgment concerning the fulfillment by the debtor of the conditions set out in Section 366 before confirming a plan of arrangement under Chapter XI. The referee then found that the debtor had satisfied the conditions of sub-sections (1), (2) and (4); that is, that the provisions of Chapter XI had been complied with, that the plan was for the best interest of creditors and was feasible, and that the proposal and acceptance by creditors were in good faith.
 
 
 12
 In dealing with the requirements of sub-section (3), the referee referred to Section 14(c) of the Bankruptcy Act [11 U.S.C. Sec. 32(c)], which provides as follows:
 
 Sec. 32. Discharges, when granted
 
 13
 ******
 
 
 14
 * * *
 
 
 15
 (c) The court shall grant the discharge unless satisfied that the bankrupt has (1) committed an offense punishable by imprisonment as provided under section 152 of Title 18; or (2) destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case; or (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition; or (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed, any of his property, with intent to hinder, delay, or defraud his creditors; or (5) in a proceeding under this title commenced within six years prior to the date of the filing of the petition in bankruptcy had been granted a discharge, or had a composition or an arrangement by way of composition or a wage earner's plan by way of composition confirmed under this title; or (6) in the course of a proceeding under this title refused to obey any lawful order of, or to answer any material question approved by, the court; or (7) has failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities: Provided, That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt.
 
 
 16
 The opinion recited that it was the debtor's responsibility to satisfy the court that the conditions of Section 366 have been met and, "We cannot conclude that we are satisfied that the debtor has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to the discharge of a bankrupt."
 
 
 17
 In reaching this conclusion, the referee indicated that there was evidence that Sec. 14(c)(4) of the Act may have been violated by the debtor's granting of security to a group of banks on September 1, 1970. In that transaction approximately $1,125,000.00 of new money was obtained by the debtor, and the banks were given security for some $30,000,000.00 of pre-existing debt, which had been unsecured, in addition to the new loans. This transaction was fully disclosed in the minutes of KDI Corporation and discussed at length in a letter from the creditor's committee to the general creditors of KDI Corporation. In that letter the bank arrangement was described as "vulnerable" under Section 70(e) of the Bankruptcy Act which deals with fraudulent and voidable transfers by a bankrupt debtor. While recognizing this vulnerability, the creditors' committee pointed out that it had been instrumental in arranging for $3,000,000.00 of new working capital from the same banks and reworking the terms of the bank loan in a manner which was very advantageous to the debtor and, therefore, to the creditors. The report strongly recommended approval of the proposed plan of arrangement, which depended to a large extent on the continued cooperation of the banks for its viability.
 
 
 18
 The referee seized upon the characterization of the bank arrangement as "vulnerable" and held that it was the obligation of the debtor to satisfy the court that the "questionable transaction" was not an act which would be a bar to the discharge of a bankrupt. On March 29, 1972 the debtor filed a petition for review addressed to District Judge Porter, who entered an order in which he declined to review the referee's order denying confirmation. The matter was remanded to the referee with instructions to entertain a motion to reopen the proceedings to confirm the plan.
 
 
 19
 In an accompanying opinion the court held that the objectors have the burden of making out a prima facie case before the debtor is required to show affirmatively that no act has been committed which would bar discharge. It further held that the referee should not raise this issue on his own, and that he should require more of a showing than the mere designation of a portion of the creditors' committee letter which characterizes the transaction as "vulnerable." Holding further that the referee must have evidence before him involving the intent of the debtor in making the transfer, the opinion noted that the objectors offered nothing on this question. The court then reviewed portions of the record and concluded that "in the circumstances of this case as they now are reflected in this record, the Referee could be satisfied that the transaction was not an act which would bar a discharge."
 
 
 20
 The opinion of the District Court then examined Section 14(c) of the Act, and in particular the proviso dealing with burden of proof which is contained at the end of sub-section (c). The court held ". . . (A)ssuming that the designation by the objectors of certain evidence of the debtor constitutes a prima facie case, we believe the debtor has met the burden of proving to the Referee that the transfer was not with intent to defraud creditors." Near the conclusion of its opinion the court wrote, "And it seems equally clear that KDI has met any burden it might have had cast on it by the statute, especially as to its good faith in proposing the plan which was put into question by the objectors."
 
 
 21
 Despite all these findings, the order of the District Court remanded the case to the referee with instruction to consider a motion to reopen the proceedings. The objectors, Beach and DiRubbio, have appealed from the order and opinion and the creditors' committee has filed a cross-appeal. The objectors do not question the action of the District Court in declining to review the referee's order, but do seek to reverse its holding that the burden of proving disqualification is on the objectors. The creditors' committee maintains that the District Court erred in refusing to confirm the plan of arrangement and requests this Court to direct that an order of confirmation be entered.
 
 
 22
 Section 366 speaks in mandatory terms with its requirement that the plan "shall" be confirmed if the court is satisfied that all requirements of the statute have been met. Even though the required majority of creditors signifies its approval, the referee must exercise an independent judgment as to whether the four conditions of the statute have been fulfilled. Technical Color & Chemical Works, Inc. v. Two Guys From Massapequa, Inc., 327 F.2d 737 (2d Cir. 1964); In re Graco, Inc., 364 F.2d 257 (2d Cir. 1966). And if no objections are made, a referee must study the plan carefully and make an independent determination that it is feasible and in the best interest of creditors. United Properties v. Emporium Department Stores, Inc., 379 F.2d 55 (8th Cir. 1967). In dealing with the requirements of subsection (3), however, the referee is governed by the provisions of Section 14(c) which describes the acts that would be a bar to the discharge of a bankrupt.
 
 
 23
 The present appeal does not concern feasibility of the plan or whether it is in the best interest of the creditors. These issues have been decided previously by the District Court and affirmed by this Court in No. 72-1485. The appellants here, who were the objectors before the referee, maintain that the District Judge erred in applying the provisions of Sec. 14(c) and determining that the objectors had the burden of proof under Sec. 366(3). We hold that since the ultimate issue under Sec. 366(3) can only be decided by reference to Sec. 14(c), the procedure set forth in the latter statute must necessarily be applied.
 
 
 24
 The language of Sec. 14(c) is mandatory, providing that the court "shall" grant discharge unless satisfied that the bankrupt has committed certain acts. The referee was not satisfied that the "vulnerable" transaction between the debtor and the bank consortium did not violate sub-section (4) of Sec. 14(c):
 
 
 25
 ". . . the bankrupt has . . . (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, removed, destroyed, or concealed, . . . any of his property, with intent to hinder, delay, or defraud his creditors; . . ."
 
 
 26
 In reaching his conclusion to deny confirmation, the referee failed to apply correctly the proviso at the end of Sec. 14(c) concerning burden of proof as to violations. The language clearly requires the objector to make a prima facie case of violation before the bankrupt has the burden of proving that he has not disqualified himself for discharge. Feldenstein v. Radio Distributing Company, 323 F.2d 892 (6th Cir. 1963). The District Court correctly held in its opinion that the referee erred in this case in holding that the burden was on the debtor in the first instance to prove that it had not done any of the forbidden acts. In the absence of a prima facie case by the objectors that it had committed such an act, the debtor was not required to prove anything in order to qualify as one who would have been entitled under Sec. 14(c) to discharge in bankruptcy.
 
 
 27
 Nevertheless, the referee was not satisfied and raised the question sua sponte. In its opinion the District Court held that the referee should not have raised the question on its own, citing Collier on Bankruptcy, Vol. 9, p. 328. We agree that the duty to exercise independent judgment does not permit the referee to require a debtor under Chapter XI to prove that it has not been guilty of an act or omission which would be a bar to discharge of a bankrupt, where objecting creditors fail to produce any evidence of such acts or omissions.
 
 
 28
 The reference to the "vulnerability" of the bank transaction falls far short of making a prima facie case of disqualification under Sec. 14(c)(4), the portion of the statute referred to by the referee. The language there is ". . . transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed, any of his property, with intent to hinder, delay, or defraud his creditors; . . ." (emphasis added). A fair reading of the entire letter from the creditors' committee convinces us that no intent to hinder, delay or defraud creditors was discovered or intimated. On the contrary, the transaction was described as being for the benefit of the corporation in its fight for survival, and ultimately for the benefit of the creditors. The very "vulnerability" of the transaction gave the new management and the creditors' committee leverage which they used to obtain a reduction of interest obligations and a generally favorable renegotiation of the bank debt. There was no attempt to conceal the questioned transaction and nothing was destroyed or removed. There was a transfer only in the sense that assets were pledged for an antecedent debt. If actually vulnerable at all, the transaction would have at most constituted a preference. As the Supreme Court pointed out in Coder v. Arts, 213 U.S. 223, 241, 29 S.Ct. 436, 443, 53 L.Ed. 772 (1909): "An attempt to prefer is not to be confounded with an attempt to defraud, nor a preferential transfer with a fraudulent one." In order to have present a prima facie case of disqualification, the objectors would have been required to prove not only that the forbidden act or acts were done, but also that they were done with an actual intent to hinder, delay or defraud creditors. The record is barren of any evidence that such intent existed.
 
 
 29
 In addition to referring to the letter of the creditors' committee, counsel for the objectors cross-examined Lewis Matthey, chief of the new management team of KDI and a witness in support of confirmation. He testified that he had sought advice of counsel and had determined that the bank pledge was given in good faith and was a bona fide pledge -"an honorable piece of business." He further testified that the plan was sound for the general creditors and described the concessions which the banks had made with respect to interest charges and term of loans. This cross-examination produced none of the "badges of fraud" found in such cases as Technical Color & Chemical Works, Inc. v. Two Guys From Massapequa, Inc., supra; Dixwell v. Scott & Co., Ltd., 115 F.2d 873 (1st Cir. 1940) and In re Stanley Karman, Inc., 279 F.Supp. 828 (S.D.N. Y.1967). Indeed, the case more nearly resembles In re Graco, Inc., 364 F.2d 257 (2d Cir. 1966) where the court made the following observation:
 
 
 30
 "On the other hand, counsel for appellants at no time attempted to introduce contrary evidence, and it is quite clear that the objection was part of a general plan to throw as many obstacles as possible in the path of an arrangement." 364 F.2d at 260.
 
 
 31
 The appellants say that the burden of proof should be on the debtor because it has all the records and information necessary to show the acts required for disqualification. Here the debtor disclosed the bank transaction and filed copies of its minutes as exhibits in the hearing before the referee. All the facts concerning the transaction were in the open and the appellants had ample opportunity to uncover any wrongdoing, if it existed, by means of discovery. Instead they chose to rely on a single word in the letter of the creditors' committee and cross-examination of the debtor's witness. If evidence of wrongdoing existed, surely the appellants would have pursued it more vigorously.
 
 
 32
 We are confronted with the anomalous situation that the District Court has held that the referee erred in assigning the burden of proof to the debtor rather than to the objectors and in raising the issue of disqualification sua sponte, but nevertheless has not reversed the referee's order. Furthermore, while declining to review that order, the District Court has filed an opinion in which it reviewed all the proceedings before the referee and concluded that even if the objectors had made a prima facie case, "We believe the debtor has met the burden of proving to the Referee that the transfer was not with intent to defraud creditors."
 
 
 33
 The petition for an arrangement under Chapter XI was filed December 30, 1970 and the proposed plan of arrangement was filed April 6, 1971. The District Court and this Court have held that proceedings were properly brought under Chapter XI and that the proposed plan is legal and is in the best interest of creditors, and is feasible. The referee has found that three of the four statutory requirements for confirmation have been met. Based upon an erroneous premise as to which party had the obligation to satisfy him as to the remaining requirement, the referee withheld confirmation. However, the District Court has found that there was no evidence of any act or omission by the debtor that would disqualify it under the remaining condition. Applying the mandatory language of Sec. 366 to the facts, we hold that the debtor was entitled, as a matter of law, to an order confirming the proposed plan of arrangement. The objectors have had ample opportunity, in hearings before the referee and the District Court, to produce evidence of disqualifying acts. There is no reason to believe that a remand for further hearings before the referee, with review by the District Court, would compel a different conclusion. Cf. Slocum v. Edwards, 168 F.2d 627, 632 (2d Cir. 1948).
 
 
 34
 The record, which we have now twice reviewed, fully supports the factual determinations set forth in the opinion of the District Court. The Court erred, however, in failing to enter an order of confirmation upon being satisfied that all of the requirements of Sec. 366 had been met by the debtor. Pursuant to Sec. 24(a) of the Act[1] we remand to the District Court and direct that an order be entered confirming the proposed plan of arrangement as amended.
 
 
 35
 So ordered. Appellants, Beach and DiRubbio, will pay the costs.
 
 
 
 [1]
 Section 24(a) of the Bankruptcy Act [11 U.S.C. Sec. 47(a)]:
 Sec. 47. Jurisdiction of appellate courts
 (a) The United States courts of appeals, in vacation, in chambers, and during their respective terms, as now or as they may be hereafter held, are invested with appellate jurisdiction from the several courts of bankruptcy in their respective jurisdictions in proceedings in bankruptcy, either interlocutory or final, and in controversies arising in proceedings in bankruptcy, to review, affirm, revise, or reverse, both in matters of law and in matters of fact: Provided however, That the jurisdiction upon appeal from a judgment on a verdict rendered by a jury shall extend to matters of law only: And provided further, That when any order, decree, or judgment involves less than $500, an appeal therefrom may be taken only upon allowance of the appellate court.